IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-00823-PAB

MOHIT MOHIT,

Petitioner,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY,
CUSTOMS AND BORDER PROTECTION,
CITIZENSHIP AND IMMIGRATION SERVICES,
IMMIGRATION AND CUSTOMS ENFORCEMENT,
DEPARTMENT OF JUSTICE,
WILLIAM P. BARR, Attorney General of the United States,
CHAD F. WOLF, Acting Secretary of the U.S. DHS, and Commissioner of U.S. CBP,
KENNETH T. CUCCINELLI, Director of U.S. CIS (still listed on U.S. CIS website as Director),
MATTHEW ALBENCE, Acting Director of Immigration and Customs Enforcement,
ROBERT DAUM, Director, Houston Asylum Office,
JOHN FABBRICATORE, Field Office Director, Denver Field Office, U.S. ICE, and
JOHNNY CHOATE, Warden, Aurora Immigrant Detention Facility, GEO Group,

Respondents.

---

**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

---

On March 26, 2020, petitioner Mohit Mohit filed through counsel a Petition for Writ of Habeas Corpus [Docket No. 1]. On March 30, 2020, Magistrate Judge N. Reid Neureiter ordered respondents to show cause why the application should not be granted within 21 days. Docket No. 6 at 1. The case was reassigned to the Court on April 17, 2020. Docket No. 8. Twenty-one days passed, and because respondents had not yet been served or entered an appearance in this matter, the Court issued an Amended Order to Show Cause [Docket No. 9] on April 27, 2020 ordering respondents

to show cause why the application should not be granted within 21 days of service of the application by petitioner. Docket No. 9 at 1. On May 18, 2020, respondents filed a Response to Amended Order to Show Cause [Docket No. 11]. Plaintiff replied on June 8, 2020. Docket No. 14.

## I. BACKGROUND

Petitioner Mohit Mohit is a citizen of India who was taken into the custody of United States Customs and Border Protection on or about September 10, 2019. Docket No. 1 at 2, ¶ 1; *id.* at 5, ¶ 12. He is currently being held in Aurora, Colorado at the Denver Contract Detention Facility. *Id.* at 2, ¶ 1.

Petitioner was apprehended near Calexico, California, which is located along the United States-Mexico border. *Id.* at 5, ¶ 12. Once in custody, he was placed in expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1), which provides that, if an immigration officer determines that an undocumented individual is inadmissible,[1] the officer shall order the individual "removed from the United States without further hearing or review unless the [individual] indicates either an intention to apply for asylbum . . . or a fear of persecution." *Id.*; 8 U.S.C. § 1225(b)(1)(A)(i). If the individual indicates that he or she has a fear of persecution, the individual is referred for an interview with an asylum officer to determine whether the individual has a "credible fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(ii); 8 U.S.C. § 1225(b)(1)(B)(v).

After petitioner expressed a fear of persecution related to a potential return to

---

[1] Petitioner was considered subject to expedited removal because he was apprehended within 100 miles of the United States-Mexico border within 14 days of entry. Fed. Reg. 48879 (2004).

India,[2] an asylum officer conducted a credible fear interview with petitioner. Docket No. 1 at 2, ¶ 2. The asylum officer determined that petitioner was credible and that petitioner had established past persecution. *Id.* at 10, ¶ 29. Specifically, petitioner testified that he was physically assaulted and threatened by BJP workers on two occasions. *Id.* at 7, ¶ 21. However, the asylum officer ultimately found that there was "no reasonable possibility the [petitioner] can establish in a full hearing that he cannot safely and reasonably relocate within India." *Id.* at 10, ¶ 29. The asylum officer concluded that petitioner did not have a reasonable fear of persecution or torture should he return to India. *Id.* at 10-11, ¶ 31. In addition, the asylum officer found that petitioner was barred from asylum. *Id.* at 7, ¶ 18. An immigration judge affirmed the asylum officer's conclusion. *Id.* at 11, ¶ 32.

Petitioner now brings a petition for a writ of habeas corpus, arguing that the asylum officer's and immigration judge's findings are "erroneous and in violation of the DHS agency regulations, statutory asylum/withholding law, the regulations implementing the Convention Against Torture, [and] the U.S. Constitution." *Id.*, ¶ 33. He asserts that the asylum officer failed to conduct petitioner's credible fear interview "in a nonadversarial manner required by 8 C.F.R. § 209.8," *id.*, ¶ 34, which "deprived [him] of the opportunity to have a full and fair hearing in which he could introduce corroborating evidence of his claims." *Id.* at 14, ¶ 46. In addition, petitioner asserts that

---

[2] Petitioner's fear of persecution stems from his political beliefs. Docket No. 1 at 5, ¶ 13. Specifically, petitioner has worked for the India National Lok Dal ("INLD") Party, a minority liberal political party in India. *Id.* at 6, ¶¶ 14-16. Petitioner states that he has been persecuted by the more conservative Bharatiya Janata Party ("BJP"), one of the two major political parties in India. *Id.*

the immigration judge "failed to conduct a de novo review of the [asylum officer's] findings and merely rubber stamped [the asylum officer's] flawed conduct and conclusions." *Id.*, ¶ 47. Petitioner requests (1) a writ of habeas corpus ordering a new credible fear interview, *id.* at 22-23, ¶ 73; (2) a declaratory judgment that respondents are in violation of the law, *id.* at 23, ¶ 74; and (3) an emergency order staying his deportation and barring his transfer to another detention facility. *Id.* at 26.

## II. LEGAL STANDARD

The writ of habeas corpus is available if a prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see also* 28 U.S.C. § 2241(c)(1) (stating that "[t]he writ of habeas corpus shall not extend to a prisoner unless [he] is in custody."). Federal courts have habeas jurisdiction to examine the statutory and constitutional bases for an immigration detention unrelated to a final order of removal. *Demore v. Kim*, 538 U.S. 510, 517-18 (2003). "[F]or core habeas petitions challenging present physical confinement, jurisdiction lies only in one district: the district of confinement." *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004); *see also United States v. Scott*, 803 F.2d 1095, 1096 (10th Cir. 1986) ("A § 2241 petition for a writ of habeas corpus must be addressed to the federal district court in the district where the prisoner is confined."). Petitioner is currently in custody in Aurora, Colorado, which is within the geographical boundaries of the District of Colorado.

## III. ANALYSIS

Petitioner argues that his detention is unconstitutional and that respondents' "efforts and actions to deport and remove him do not comply with substantive and

procedural due process, and fail to meet the most basic requirements of the Suspension Clause, and thus the detention and removal orders are faulty and without legal force." Docket No. 1 at 22, ¶ 72. Respondents assert that the Court lacks subject matter jurisdiction to review petitioner's expedited removal via a writ of habeas corpus. Docket No. 11 at 5.

"With very limited exceptions, 'no court shall have jurisdiction to review . . . any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1).'" *Vaupel v. Ortiz*, 244 F. App'x 892, 894 (10th Cir. 2007) (unpublished) (quoting 8 U.S.C. § 1252(a)(2)(A)(i)). Specifically, § 1252 strips federal courts of jurisdiction to review "the application of [8 U.S.C. § 1225(b)(1)]" to any individuals, and also bars review of "any individual determination" or "claim arising from or relating to the implementation or operation of an order of [expedited] removal," except as provided by 8 U.S.C. § 1225(e). 8 U.S.C. § 1252(a)(2)(A)(i), (iii). Section 1252(e) provides that judicial review of a determination made under § 1225(b)(1) is available in habeas corpus proceedings only for the limited purposes of (1) determining whether the petitioner is undocumented; (2) determining whether the petitioner was ordered removed; and (3) determining whether the petitioner can prove by a preponderance of the evidence that the petitioner is a lawful permanent resident, is a refugee, or has been granted asylum. 8 U.S.C. § 1252(e)(2)(A)-(C).[3]

Respondents argue that, pursuant to the jurisdiction-stripping provisions of

[3] Petitioner's habeas petition is not based on any of these grounds. *See* Docket No. 1.

§ 1252(a)(2)(A), the Court lacks jurisdiction to review petitioner's claims. Docket No. 11 at 6. Petitioner disagrees. Petitioner asserts that § 1252 does not bar his claims because its jurisdiction-stripping provision violates the Suspension Clause of the United States Constitution, which provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." Docket No. 14 at 7; U.S. Const. art. I, § 9, cl. 2. According to petitioner, because its jurisdiction-stripping provision is unconstitutional, it cannot preclude judicial review of his expedited removal proceedings. Docket No. 14 at 7.

While the parties assert several arguments as to why the jurisdiction-stripping provisions of § 1252 do or do not violate the Suspension Clause, the Court's analysis is guided by the recent United States Supreme Court decision deciding this very issue. *See Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959 (2020). The petitioner brought a petition for a writ of habeas corpus alleging that, during the course of his expedited removal proceedings, the government had denied him a fair procedure, applied incorrect legal standards, and failed to comply with applicable statutory requirements. *See Thuraissigiam v. U.S. Dep't of Homeland Sec.*, 917 F.3d 1097, 1116 (9th Cir. 2019). The Ninth Circuit considered "whether 8 U.S.C. § 1252(e)(2) effectively suspends the writ" of habeas corpus, or, in other words, whether § 1252(e) violates the Suspension Clause. *Id.* at 1105. The court determined that the Suspension Clause required review of the petitioner's claims and that, because § 1252(e) precluded a "meaningful opportunity for such review," the jurisdiction-stripping provision violated the Suspension Clause as applied to the habeas petitioner. *Id.* at 1117-19.

The Supreme Court granted certiorari and reversed. According to the Court, the

relevant question in this analysis is whether, when the United States Constitution was adopted in 1789, the writ of habeas corpus was understood to permit an individual "to claim the right to enter or remain in a country or to obtain administrative review potentially leading to that result." *Thuraissigiam*, 140 S. Ct. at 1969; *see also I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001), *superseded by statute on other grounds as stated in Nasrallah v. Barr*, 140 S. Ct. 1683 (2020)) (The Suspension Clause "protects the writ [of habeas corpus] as it existed in 1789.").

In *Thuraissigiam*, the Supreme Court analyzed the history and applicability of the writ of habeas corpus and determined that, in 1789, the writ of habeas corpus "simply provided a means of contesting the lawfulness of restraint and securing release." 140 S. Ct. at 1969; *see also Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("It is clear . . . from the common-law history of the writ . . . that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody."); *Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention. . . . The typical remedy for such detention is, of course, release."). Highlighting the fact that the petitioner[4] had not requested to be released from custody, but had instead requested that his removal order be vacated and that he be granted a new, meaningful opportunity to apply for asylum or other relief from removal, the Supreme Court held that the relief requested "[fell] outside of the scope of the writ as it

---

[4] In *Thuraissigiam*, the Supreme Court refers to the party bringing the habeas petition as the respondent, as the government had appealed the Ninth Circuit's decision. *See, e.g.*, 140 S. Ct. at 1970.

was understood when the Constitution was adopted" and that the petitioner's requested relief was unavailable via a writ of habeas corpus. *Thuraissigiam*, 140 S. Ct. at 1970-71.[5]

As petitioner concedes in his reply brief, *Thuraissigiam* is highly similar to and "directly . . . applicable to this case." Docket No. 14 at 8. Here, as in *Thuraissigiam*, petitioner does not seek permanent release from custody. *See* Docket No. 1 at 22-23, ¶¶ 73-74; *see also id.* at 26 (requesting that the Court (1) order that petitioner be given a legally sound credible fear interview and that his claims be "properly adjudicated" by an asylum officer and immigration judge; (2) issue a declaratory judgment that respondents are in violation of the law, and (3) stay petitioner's deportation.).[6] Instead, petitioner seeks to challenge his anticipated removal from the United States. *See* Docket No. 14 at 12 (arguing that petitioner is "entitled to invoke the Suspension Clause to challenge his expedited removal order"); *see also* Docket No. 1 at 25, ¶ 78 (petitioner asserting that respondent's actions have "caused him to suffer undue hardship and an unwarranted threat of imminent removal and deportation to India"). Under *Thuraissigiam*, this requested relief "falls outside the scope of the common-law habeas writ." 140 S. Ct. at 1970. Even if this Court could order that petitioner be released,

---

[5] Because the parties completed their briefing before *Thuraissigiam* was decided by the Supreme Court, their arguments evaluated whether the Court should follow the Ninth Circuit's *Thuraissigiam* decision. *See, e.g.*, Docket No. 11 at 11; Docket No. 14 at 11.

[6] Although petitioner requests that he be released on bond "in lieu of continued detention" while proceedings are pending in the Court, Docket No. 1 at 22, ¶ 70, this request for an interim release on bond does not amount to a request that he be granted release from illegal confinement.

which it cannot, this "would not provide the right to stay in the country that his petition ultimately seeks. Without a change in status, he would remain subject to arrest, deportation, and removal." *Id.*

"The relief that a habeas court may order and the collateral consequences of that relief are two entirely different things." *Id.* at 1974. "Ordering an individual's release from custody may have the side effect of enabling that person to pursue all sorts of opportunities that the law allows. . . . [But] while the release of an alien may give the alien the opportunity to remain in the country if the immigration laws permit, we have no evidence that the writ as it was known in 1789 could be used to require that aliens be permitted to remain in a country other than their own, or as a means to seek that permission." *Id.* Because the relief that petitioner seeks – a new credible fear interview and a stay of his deportation – is not relief that has been traditionally available via a writ of habeas corpus, 8 U.S.C. § 1252(e) as applied here does not violate the Suspension clause. *Thuraissigiam*, 140 S. Ct. at 1983. As a result, the Court finds that, pursuant to 8 U.S.C. § 1252(e), the Court does not have subject matter jurisdiction to hear petitioner's claims.

In his application for a writ of habeas corpus, petitioner asserts several other bases purportedly establishing the Court's jurisdiction over his claims: 28 U.S.C. § 1361; 28 U.S.C. § 2241; 28 U.S.C. § 2201 (the Declaratory Judgment Act); and 5 U.S.C. § 702 (the Administrative Procedures Act ("APA")). Docket No. 1 at 4-5, ¶¶ 8-10. In his reply, petitioner focuses on his Suspension Clause argument and does not argue that any of these statutes provide the Court with jurisdiction over his claims. *See* Docket No. 14. Nevertheless, the Court addresses petitioner's contentions and finds

that none of these statutes form a basis for subject matter jurisdiction here.

Section 2241 of Title 28 of the United States Code "gives the United States District Courts jurisdiction to entertain petitions for habeas relief . . . from persons who are in custody in violation of the Constitution or laws or treaties of the United States." *Maleng v. Cook*, 490 U.S. 488, 490 (1989) (quotation omitted). But 8 U.S.C. § 1252(e), which the Court has determined is applicable in this case, specifically states that it applies "[n]otwithstanding any other provision of law[,] . . . *including section 2241 of Title 28.*" 8 U.S.C. § 1252(a)(2)(A) (emphasis added). This jurisdictional bar precludes judicial review of, *inter alia*, "'the determination' that an [individual] lacks a credible fear of persecution." *Thuraissigiam*, 140 S. Ct. at 1966. The Court finds that, pursuant to 8 U.S.C. § 1252 and *Thuraissigiam*, it does not have subject matter jurisdiction over this case under 28 U.S.C. § 2441. Similarly, § 1252(e) also precludes federal question jurisdiction under 28 U.S.C. § 1331. *See Patchak v. Zinke*, 138 S.Ct. 897, 905 (2018) (finding that jurisdiction-stripping provision that "applie[d] '[n]otwithstanding any other provision of law,'" includes "the general grant of federal-question jurisdiction, 28 U.S.C. § 1331.")

As for 28 U.S.C. § 1361, it provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. However, "the Mandamus statute, 28 U.S.C. § 1361, will not supply an independent basis for jurisdiction when such jurisdiction is otherwise absent." *Alvidrez v. Ridge*, 311 F. Supp. 2d 1163, 1166 (D. Kan. 2004); *see also Hamilton v. I.N.S.*, 1995

WL 620975, at *2 (10th Cir. 1995) (unpublished) (stating that 28 U.S.C. § 1361 "can be invoked only after a federal court already possesses jurisdiction."). Because the Court has already determined that § 1252(e) bars judicial review here, there is no independent basis establishing the Court's subject matter jurisdiction and 28 U.S.C. § 1361 alone is insufficient to confer jurisdiction upon the Court.

Petitioner's other jurisdictional assertions fail for similar reasons. Petitioner asserts that the Court has subject matter jurisdiction over this matter under the Declaratory Judgment Act and the APA. Docket No. 1 at 5, ¶ 10. However, the APA does not apply "to the extent that . . . statutes preclude judicial review." 5 U.S.C. § 701(a)(1). In addition, "the Declaratory Judgment Act does not confer jurisdiction upon federal courts, so the power to issue declaratory judgments must lie in some independent basis of jurisdiction." *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1202 (10th Cir. 2012) (quotation omitted). The Court has determined that there is no independent basis of jurisdiction over petitioner's claims; thus, these statutes cannot serve as the sole basis for jurisdiction here.

Because the Court finds that it does not have jurisdiction to hear petitioner's claims, the Court cannot reach the merits in this case. The petition for a writ of habeas corpus will be denied without prejudice.

## IV. CONCLUSION

For these reasons, it is

**ORDERED** that the Petition for Writ of Habeas Corpus [Docket No. 1] is **DENIED** without prejudice. It is further

**ORDERED** that this case is closed.

DATED July 14, 2020.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge